Westlaw.

46 Fed.Appx. 792
46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))

Page 1

**H**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.
James ELSMAN and Janice Elsman,
Plaintiffs-Appellants,
v.
STANDARD FEDERAL BANK (Michigan);
Standard Federal Bank (Chicago); Standard
Federal Bancorporation; Dykema Gossett; Craig
L. John; Andrew J. Lusk; and
Katherine M. White, Defendants-Appellees.
**No. 00-2293, 01-1544.**
Sept. 5, 2002.

Mortgagor sued mortgagee and related entities for federal statutory and constitutional violations allegedly stemming from foreclosure on mortgagor's real and personal property. The United States District Court for the Eastern District of Michigan granted defendants' motion to dismiss or, alternatively, for summary judgment, and imposed Rule 11 sanctions in the amount of $16,690.56 against mortgagor. Mortgagor appealed. The Court of Appeals, Ryan, Circuit Judge, held that: (1) *Rooker-Feldman* doctrine prevented district court from exercising subject matter jurisdiction over claims concerning real property foreclosure; (2)

defendants were not state actors subject to liability under § 1983 or for alleged due process violations; (3) argument raised for first time on appeal could not be considered; (4) complaint failed to plead actionable claim under federal statutes and state law; and (5) district court's ruling on sanctions motion was abuse of discretion.

Affirmed in part, reversed in part, vacated in part, and remanded.

West Headnotes

**[1] Courts ⬤⇒509**
106k509 Most Cited Cases
*Rooker-Feldman* doctrine prevented district court from exercising subject matter jurisdiction over mortgagor's due process and equal protection claims relating to mortgagee's foreclosure of real property, which were fully adjudicated by state courts. U.S.C.A. Const.Amend. 14.

**[2] Federal Courts ⬤⇒915**
170Bk915 Most Cited Cases
Appellant waived claims for which his appellate brief offered no argument.

**[3] Civil Rights ⬤⇒1326(9)**
78k1326(9) Most Cited Cases
(Formerly 78k198(8))

**[3] Constitutional Law ⬤⇒254(5)**
92k254(5) Most Cited Cases
Bank and related individuals involved in seizure of judgment debtor's property, pursuant to execution of judgment, were not state actors, and thus could not be held liable under § 1983 or for alleged due process violations. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[4] Federal Courts ⬤⇒611**
170Bk611 Most Cited Cases
Argument raised for first time on appeal could not be considered by Court of Appeals.

**[5] Consumer Credit ⬤⇒66**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

46 Fed.Appx. 792                                                                          Page 2
46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
**(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))**

92Bk66 Most Cited Cases

**[5] Consumer Protection ⚖38**
92Hk38 Most Cited Cases

**[5] Racketeer Influenced and Corrupt Organizations ⚖69**
319Hk69 Most Cited Cases
Complaint that contained only summary conclusion that bank's debt collection efforts violated Truth-in-Lending Act (TILA), Consumer Credit Protection Act, Fair Debt Collection Practices Act (FDCPA), Racketeer Influenced and Corrupt Organizations Act (RICO), and state law, with no attempt to present facts concerning elements required to prove violations of such laws, did not adequately plead any actionable claim. Consumer Credit Protection Act, §§ 102 et seq., 802 et seq., as amended, 15 U.S.C.A. §§ 1601 et seq., 1692 et seq.; 18 U.S.C.A. § 1961 et seq.; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Federal Civil Procedure ⚖2830**
170Ak2830 Most Cited Cases
District court failed to comply with requirement that it describe conduct determined to violate Rule 11 and explain basis for sanction imposed, and thus abused its discretion, when court merely noted that motion for sanctions had to be granted for reasons briefed and argued by movants, in that ruling prevented Court of Appeals from conducting informed appellate review. Fed.Rules Civ.Proc.Rule 11(c)(3), 28 U.S.C.A.
*793 On appeal from the United States District Court for the Eastern District of Michigan.

Before RYAN, BOGGS, and COLE, Circuit Judges.

RYAN, Circuit Judge.

**1 The plaintiffs, James Elsman and Janice Elsman, appeal the district court's summary judgment for the defendants. In their complaint, the Elsmans alleged a variety *794 of federal statutory and constitutional violations stemming from the defendant Standard Federal Bank's foreclosure on mortgaged real property the Elsmans owned. In addition, James Elsman appeals the district court's imposition of sanctions against him in the amount of $16,690.56, granted pursuant to

Rule 11 of the Federal Rules of Civil Procedure.

We affirm the district court's order granting the defendants' motion to dismiss and/or for summary judgment. However, because the district court failed to identify the basis for the Rule 11 sanctions and failed to conduct any inquiry into the reasonableness of the award amount, we reverse the judgment awarding sanctions and remand the Rule 11 inquiry to the district court for further proceedings.

**I. BACKGROUND**
While the suit names both James Elsman and Janice Elsman as plaintiffs, the relevant facts concern only James Elsman. James Elsman, a practicing attorney, has served as his own counsel throughout the course of this litigation. In this opinion we address two separate appeals, which we have consolidated for hearing and decision. In appeal No. 00-2293, Elsman challenges the district court's grant of the defendants' motion to dismiss and/or for summary judgment, and in appeal No. 01-1544, he addresses the Rule 11 sanctions imposed against him.

Both appeals derive from Standard Federal's foreclosure on mortgaged property owned by Elsman and subsequent state litigation. The facts of the underlying dispute can be divided into (1) the bank's foreclosure on Elsman's real estate and (2) the subsequent seizure of his personal property. We discuss each in turn.

**A. Real Property Foreclosure**
Over a period of years, Standard Federal provided Elsman a series of loans, including a $320,000 loan for which Elsman gave the bank a promissory note. To secure payment of the note, Elsman granted the bank a mortgage interest in property located in Birmingham, Michigan. When Elsman failed to make timely payments on the loans, the bank foreclosed on the Birmingham property by advertisement and exercised the power of sale contained in the mortgage agreement by holding a sheriff's sale in July 1995. From that action, the bank obtained a sheriff's deed on the property for $277,500. Immediately prior to the expiration of a six-month redemption period, Elsman filed suit in Oakland County Circuit Court claiming that the Michigan foreclosure statutes violated due process.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

46 Fed.Appx. 792
46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
**(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))**

The parties reached a settlement and negotiated a workout schedule, and the case was dismissed with prejudice.

While Elsman largely complied with the agreed workout requirements, which stipulated that he make $8,000 monthly payments, after April 1, 1997, he fell out of compliance with the agreement by failing to obtain the release of a second mortgage. The bank then filed a complaint for possession in Michigan district court. The state district court granted Standard Federal a judgment of possession on July 31, 1997.

**\*\*2** After issuance of the judgment of possession, Elsman filed a motion for reconsideration, which was denied. He then filed numerous appeals in the Michigan courts. During the pendency of these appeals, no writ of restitution issued and the bank was unable to enforce its judgment of possession. Appeals to the Oakland County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court were unsuccessful. *See* **\*795** *Standard Fed. Bank v. Elsman*, 461 Mich. 898, 607 N.W.2d 726 (Mich.2000) (Table); *Standard Fed. Bank v. Elsman*, 461 Mich. 898, 603 N.W.2d 644 (Mich.1999) (Table).

His state appeals exhausted, Elsman filed suit in federal district court on May 2, 2000, contending that he was being denied his due process right to sell the Birmingham property to a party offering more than the bank's contracted buyer. After filing his federal complaint, Elsman also filed a notice of *lis pendens* on the Birmingham property with the Oakland County Register of Deeds. He returned to Michigan state court on May 3, 2000, arguing that the filing of his federal suit stayed the writ of restitution set to issue on that day. The state court denied Elsman's motion and issued the writ of restitution. Undeterred, on the same day, Elsman appeared in federal district court seeking a temporary restraining order (TRO). At the hearing, Elsman sought the return of personal property that had been seized by Standard Federal, about which more *infra*, and an order prohibiting further foreclosures. Without issuing an order, the district court did not grant the requested TRO. On June 20, 2000, the writ of restitution on the Birmingham property was finally executed.

### B. Personal Property

The second set of facts germane to these appeals concerns Elsman's personal property, but begins with Standard Federal's foreclosure on another piece of real property for which Elsman was the mortgagor. The property's identity is not made clear by the parties, but the foreclosure sale of this second parcel resulted in a deficiency. The Oakland County Circuit Court mediated the dispute and entered a $125,000 judgment in favor of Standard Federal. Elsman made payments on the judgment over two years and claims that he paid approximately $100,000. Nevertheless, Elsman failed to satisfy the judgment and the bank sought, and obtained, an execution against Elsman's personal property for $44,542. Elsman's motor vehicle, a van, and some personal property within the van were seized as a result of that action. Elsman alleges that the executing officer and two Birmingham police officers came "storming into" his locked office building to take possession of the property.

### C. District Court Proceedings

It was with these events as background, that Elsman filed the federal complaint that is the subject of this appeal. Seeking class certification (Count I) and injunctive relief (Count IX), Elsman challenged the bank's actions involving the real property in Counts II and III. He also argued the following, relative to the van seizure: that seizure of the van occurred in violation of due process, equal protection, and the Takings Clause (Count IV); § 1983 claims for violation of unnamed Michigan and United States constitutional provisions (Count V); violation of the Truth in Lending Act (TILA), the Consumer Credit Protection Act, and the Fair Debt Collection Act (Count VI); RICO violations (Count VII); and "lender liability" for breach of fiduciary duty, fraud, and violation of good faith and fair dealing (Count VIII).

**\*\*3** The defendants filed a motion to dismiss and/or for summary judgment on August 7, 2000, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. At a hearing on the motion, the district court first denied Elsman's motion to adjourn the proceedings, noting that the briefing schedule had been set out far in advance. The district court then granted the defendants'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

46 Fed.Appx. 792                                                                                        Page 4
46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))

motion in cursory fashion. It stated from the bench: "For the reasons that ... the defense has briefed and argued here, this Court is constrained to grant the motion to dismiss." Relying on the *Rooker/\*796 Feldman* doctrine, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the court noted that it did not have jurisdiction to review the holdings of the Michigan courts and if an appeal were to be taken it should be to the United States Supreme Court. The court also held that the *claims not fully litigated* in the state court were barred by the doctrine of *res judicata*. In a seeming contradiction, however, the district court concluded that all of Elsman's arguments *had been presented and ruled on* in a previous lawsuit involving the same parties. The district court did not identify to which arguments it was referring.

### D. Rule 11 Sanctions

On February 26, 2001, the district court held a hearing on the defendants' motion for Rule 11 sanctions against Elsman. The defendants argued that Elsman filed the federal suit for the sole purpose of avoiding collection of judgments and that the legal and factual contentions in his complaint were without basis. The defendants asked the court to "award fifteen thousand dollars in monetary sanctions and order Mr. Elsman to remove a notice of his lis pendens that he filed" on the Birmingham property. The court questioned the defendants' counsel on the $15,000 figure, and counsel responded that she could submit an itemized bill setting forth the basis for that amount. Elsman spent the majority of the hearing re-arguing the court's motion-to-dismiss judgment, stating that he "never had any day in court to contest that [the defendants] had no right to break in by jimmying my door, bring two police officers, confront my secretary, confront my staff and proceed to seize personal property. I thought it was Nazi-like. I called it in my complaint a jackboot raid."

At the conclusion of the hearing, the district court ruled in the defendants' favor. It simply stated, "Mr. Elsman, it does appear that for all the reasons that the defense here has briefed and argued, the Court must grant their Motion for Rule Eleven Sanctions." The amount of the award was left

undetermined, but the court held that it would "award sanctions if they are properly supported under oath by the defense, costs and attorney fees ...." The defendants were ordered to submit an itemized statement detailing their calculation of appropriate sanctions, and Elsman would then have seven days in which to dispute that amount. Elsman was also ordered to remove the notice of *lis pendens* on the Birmingham property. The defendants thereafter submitted an affidavit setting forth their request for attorney fees, to which Elsman responded. The defendants requested a total of $20,973.66 in fees, $4,283.10 of which related to appellate work. The district court then issued a final judgment ordering Elsman to pay the defendants $16,690.56, which represented the defendants' fees and expenses accrued defending the action in the district court.

### II. MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

**\*\*4** Elsman's argument concerning the motion to dismiss/summary judgment is predicated on two different assertions. First, he contends that when the foreclosed Birmingham property was offered for sale, that due process, equal protection, and "other equities" required the bank to accept the high bid of $325,000, which Elsman notes he had negotiated with a professional football player. The bank accepted a bid of $200,000 for the building. Elsman admits, however, that he has advanced this argument before Michigan courts and that "[t]he State Courts of Michigan did not \*797 agree with [him], right up to, and including, the Supreme Court of Michigan, where no Michigan Court was willing to rule that Bank must sell to the Elsmans ...." As a second point, he argues that the seizure of his van violated the TILA, the Consumer Credit Protection Act, and the Fair Debt Collection Act, as well as constitutional provisions concerning due process and prohibition of "illegal Entry and Search."

Elsman also offers four additional arguments. He first contends that the court's failure to adjourn the hearing on the defendants' motion to dismiss/summary judgment was improper because three of the four forms of discovery available to him had not been undertaken and there had been no pretrial hearing. Second, he argues that the district court improperly restricted discovery. He states that discovery would have demonstrated that there

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

46 Fed.Appx. 792                                                                                    Page 5
46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
**(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))**

was no previous litigation concerning the " 'Nazi storm-trooper' back-door-break-in." In his third argument, Elsman contends that *Rooker/Feldman* is so fraught with exceptions, it is not a doctrine. In his fourth claim, Elsman contends that the court should have granted him leave to amend his complaint to delete those counts not related to his personal property arguments.

We review a district court's grant of a motion to dismiss and/or for summary judgment *de novo*. *Patmon v. Michigan Supreme Court,* 224 F.3d 504, 508 (6th Cir.2000). Pursuant to that standard, we find that the district court properly granted summary judgment to the defendants. For ease of discussion, we review Elsman's real property and personal property claims independently.

### A. Real Property Argument

[1] The district court properly held that the *Rooker/Feldman* doctrine prevented it from exercising subject matter jurisdiction over Elsman's real property claims. In short, if Elsman wished to further challenge the defendants' refusal to accept his negotiated high bid for the Birmingham property, he should have filed for *certiorari* in the United States Supreme Court. By federal statute, state supreme court judgments are reviewable by the United States Supreme Court, provided that the state body has ruled on the validity of a federal law or the validity of a state law relative to the United States Constitution or federal statutes. 28 U.S.C. § 1257(a); *see Rooker,* 263 U.S. at 416. In *Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206, the Supreme Court examined this statute and held that it provides the only avenue for federal review of a state court judgment. *Id.* at 476. Therefore, as this court has noted, "Review of final determinations in state judicial proceedings can be obtained only in the United States Supreme Court." *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.* (*In re Sun Valley Foods Co.*), 801 F.2d 186, 189 (6th Cir.1986). While there is an exception to *Rooker/Feldman* when a plaintiff makes a claim facially attacking the constitutionality of a statute, *Patmon,* 224 F.3d at 509, this is not such a case. As Elsman readily admits, he fully argued before Michigan courts that the bank's refusal to accept $325,000 for the Birmingham property violated due process and equal protection guarantees. When that argument was rejected by Michigan courts, his

recourse was to the United States Supreme Court. The district court properly declined to exercise subject matter jurisdiction over Elsman's real property claims.

### B. Personal Property Argument

**5 Elsman's personal property claims present a more difficult question. The district court's simple assertion that "[f]or the reasons *798 that ... the defense has briefed and argued here, this Court is constrained to grant the motion to dismiss," further muddles the issue.

[2] In his brief to this court, Elsman argues that the seizure of the van and the other personal property violated due process; constituted an "illegal Entry and Search"; violated 42 U.S.C. § 1983; and violated the TILA, the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and Michigan common law. Elsman waives whatever equal protection or Takings Clause argument he was advancing in his complaint, because his brief offers no argument on either.

Because we have practically no district court record to review, we must turn to the parties' filings in that court in an attempt to discern the basis for the district court's decision. Upon recourse to the defendants' brief to the district court, it is clear that the defendants rested their motion for dismissal and/or for summary judgment on the *Rooker/Feldman* doctrine, *res judicata,* and the fact that the defendants are not state actors. The defendants also argued that Elsman's federal statutory and state law claims failed on their face. Each of Elsman's arguments can be disposed of by resort to one of these grounds.

[3] Elsman's due process and § 1983 arguments are without merit because these defendants are not state actors. "It is undisputed that ... Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action ...." *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000); *see* U.S. Const. amend. XIV, § 1; *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (Fourteenth Amendment); *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (§ 1983). There is an exception to this general rule: "[A] private entity can be held to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

46 Fed.Appx. 792
46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
**(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))**

Page 6

constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Lansing*, 202 F.3d at 828. Elsman, however, does not argue that the activities of these private actors can be attributed to the state and we decline to make that argument for him. Even though Elsman named state officials as defendants in his original complaint, they did not file briefs, they made no appearances, and they are not parties to this appeal. Their absence from any part of the litigation requires us to conclude that this is an action against private parties. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The district court properly dismissed Elsman's due process and § 1983 claims.

[4] Elsman also presents an argument in his brief styled as "illegal Entry and Search," which he represents is derived from allegations appearing in Count IV of his complaint. However, nowhere in Count IV can any such claim be found; rather it appears this "illegal Entry and Search" claim is presented for the first time on appeal, and even here the argument is not developed sufficiently to enable us to understand it.

**6 It is a general rule that a federal court of appeals cannot review and therefore does not pass judgment on an argument not considered in the court below. *In re Morris*, 260 F.3d 654, 663 (6th Cir.2001). "[I]n certain circumstances, such as where proper resolution is beyond any doubt or where injustice might otherwise result, an appellate court could properly consider issues not passed on below ...." *Id.* (internal quotation marks omitted). This, plainly, is not such a case.

*799 We turn next to Elsman's remaining statutory and state law claims. At oral argument, counsel for the defendants claimed that the federal statutory and state law allegations set forth by Elsman were barred by *res judicata*. The defendants apparently view these claims as a challenge to the validity of the underlying debt and the propriety of the defendants' collection efforts. The defendants contend that the debt amount has been adjudicated by a Michigan court and that attempts to relitigate the bank's legal rights relative to that debt are precluded.

Reference to the defendants' brief to this court demonstrates that counsel's argument is a new strategy first presented at oral argument before us. The defendants' brief makes clear that their *res judicata* discussion is confined to the "Birmingham Property and the Real Property Action." Nowhere in their appellees' brief do they argue that the doctrine of *res judicata* has any preclusive effect on claims concerning the seizure of Elsman's personal property. Moreover, review of their brief to the district court reveals that at no time did the defendants argue below that *res judicata* barred Elsman's personal property claims. Instead, their brief to the district court makes clear that their argument against Elsman's federal statutory and state law claims is founded on the belief that the TILA, the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and state law claims fail because Elsman did not set forth any allegations relating to the essential elements of any of the claims.

Elsman's largely unintelligible complaint and briefs certainly do little to clarify the point. If he is arguing that the debt he owes Standard Federal is somehow indeterminate, that argument is precluded by the Oakland County Circuit Court's judgment holding that Elsman owes in excess of $40,000 to Standard Federal and that the defendants can collect on that debt. If, however, he is arguing that the manner in which the personal property seizure was conducted violated the federal and state laws at issue, that argument was presented for the first time to the district court, which erroneously dismissed those claims based on *res judicata*.

[5] Nevertheless, upon review of his federal statutory and state claims, it is clear that Elsman alleges nothing more than bare legal conclusions that the defendants violated selected federal statutes and state law. In reviewing a judgment granting a motion to dismiss, we may properly affirm the district court on any grounds suggested by the record, even those not considered below. *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir.1999). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.... [M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Advocacy*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))
**(Cite as: 46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.)))**

*Org. for Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 319 (6th Cir.1999) (internal quotation marks and citations omitted). Here, Elsman's complaint contains only the summary conclusion that the defendants' actions violated the TILA, the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and state law. Elsman makes no attempt in his complaint or in his briefs to present any facts concerning the elements required to prove violation of any of the aforementioned federal statutes and state claims. Even though the district court did not employ the correct legal principle in dismissing Elsman's claims, dismissal was appropriate because the ***800** complaint does not adequately plead any actionable claim.

****7** Finally, upon review of the record we are satisfied that neither Elsman's argument that he should have been allowed to amend his complaint, nor his argument that the district court erroneously denied his motion to adjourn, have merit.

### III. RULE 11 SANCTIONS

Elsman next contends that the district court failed to comply with Federal Rule of Civil Procedure 11(c)(3), which requires that a court issuing Rule 11 sanctions must describe the alleged offender's conduct and explain the basis for its decision. The defendants counter that the district court complied with Rule 11(c)(3) when it noted on the record that it was imposing sanctions "for all the reasons that the defense here has briefed and argued." In addition, the court articulated its reasons for imposing sanctions when it noted that Elsman had no legal or good faith basis for arguing for modification of an existing law.

All aspects of the district court's imposition of Rule 11 sanctions are subject to review under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Ridder v. City of Springfield,* 109 F.3d 288, 293 (6th Cir.1997).

We begin our analysis by noting that the Federal Rules of Civil Procedure are to be given their plain meaning, and when their terms are unambiguous, judicial inquiry is at an end. *Pavelic & LeFlore v. Marvel Entm't Group,* 493 U.S. 120, 123, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). The Rules allow for the award of "all of the reasonable attorneys' fees

and other expenses incurred as a direct result of the [Rule 11] violation." Fed.R.Civ.P. 11(c)(2). The test for the imposition of Rule 11 sanctions remains whether the individual's conduct was reasonable under the circumstances. *United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491, 507 (6th Cir.1998); *Union Planters Bank v. L & J Dev. Co.,* 115 F.3d 378, 384 (6th Cir.1997). Although the Federal Rules discourage awards to injured parties, a direct payout is particularly appropriate if the violation involves filings that were intended to harass or cause unnecessary delay, as described in Federal Rule of Civil Procedure 11(b)(1). *Union Planters,* 115 F.3d at 386.

We have held that a district court is required to make specific inquiries when imposing Rule 11 sanctions. First, "before an award of attorneys' fees may be made under the rule, it must be shown that the fees were incurred because of the filing of an improper pleading.... [B]efore granting a motion for fees under Rule 11, a trial court must *analyze* the impact upon the moving party of *discrete acts* of claimed misconduct." *Bodenhamer Bldg. Corp. v. Architectural Research Corp.,* 989 F.2d 213, 218 (6th Cir.1993) [hereinafter *Bodenhamer II* ] (internal quotation marks, citation, and alterations omitted) (emphasis added). Second, when a party moves for reimbursement of costs and legal fees, the district court should investigate the reasonableness of such costs and fees. *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 419 (6th Cir.1992).

****8** Upon completion of the above mentioned inquiries, the court must announce its findings. "When imposing sanctions, the court *shall describe* the conduct determined to constitute a violation of this rule *and explain* the basis for the sanction imposed." Fed.R.Civ.P. 11(c)(3) (emphasis added). The district court's failure to adequately describe the misconduct found and to explain the basis for imposing the particular sanction selected is an abuse of discretion. We have held previously that the district ***801** court's failure to "indicate how any particular pleading, motion, or paper relates to any particular expense or attorney fee" merits remand. *Bodenhamer Bldg. Corp. v. Architectural Research Corp.,* 873 F.2d 109, 114 (6th Cir.1989) [hereinafter *Bodenhamer I* ]; *see Vild v. Visconsi,* 956 F.2d 560, 571 (6th Cir.1992). When the district

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court fails "to make the findings necessary to support a blanket award of attorneys' fees[,]" the sanction award must be overturned. *Bodenhamer II*, 989 F.2d at 217. Commentators on the Federal Rules of Civil Procedure have reached a similar conclusion:

> If sanctions are deemed appropriate, the court should indicate fairly precisely what conduct has been found to be improper and under which provision of law the sanctions are being awarded.
> In addition, and particularly when a substantial amount of money is involved, the district judge should state with some specificity the manner in which the sanction has been computed.

5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1337, at 132-33 (1990) (footnotes omitted). Several of our sister circuits have held that the district court's failure to state the basis for sanctions justifies remand when that failing limits the appellate court's ability to conduct its review. *See, e.g., Katz v. Household Int'l, Inc.,* 36 F.3d 670, 673 (7th Cir.1994); *Fed. Deposit Ins. Corp. v. Calhoun,* 34 F.3d 1291, 1297 (5th Cir.1994); *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir.1994).

[6] We note that the district court is not always required to provide a full evidentiary hearing prior to imposing Rule 11 sanctions. *Union Planters,* 115 F.3d at 385. Moreover, we also recognize "that the job of trying to break down attorney fees in a way consistent with this rule is an unmitigated headache." *Bodenhamer II,* 989 F.2d at 219. Nonetheless, the plain meaning of Rule 11(c)(3) and our precedent direct us to remand Rule 11 sanctions when the district court fails to identify specifically the conduct in violation of Rule 11, and fails to inquire into the reasonableness of the award amount. Such failure constitutes an abuse of discretion.

Merely noting, as this district court did, that "it does appear that for all the reasons that the defense here has briefed and argued, the Court *must* grant their Motion for Rule Eleven Sanctions" (emphasis added), does not satisfy Rule 11(c)(3)'s directive. The district judge did not "*describe* the conduct determined to constitute a violation of this rule *and* [did not] *explain* the basis for the sanction imposed." Fed.R.Civ.P. 11(c)(3) (emphasis added).

It is not sufficient for the district court merely to announce its agreement with the "reasons ... briefed and argued" by the party seeking sanctions, and then leave it to this court to comb through the accusing parties' pleadings and briefs filed in the district court and the transcript of any oral argument made there, in order to locate for itself facts that might constitute sufficient grounds for the imposition of Rule 11 sanctions. When imposing Rule 11 sanctions, the district court must itself *identify* the offending filing that is the basis of the sanctions and must state *how* that filing violates Rule 11. Furthermore, the court must issue findings as to the reasonableness of the award calculation. The district court did none of those things in this case. Its failure has prevented us from conducting an informed appellate review and amounts to an abuse of discretion.

**\*9** Therefore, we hold that the district court failed to comply with the requirements of Rule 11(c)(3) when it imposed Rule 11 sanctions against Elsman merely **\*802** by adopting, in whole, "the reasons that the defense here has briefed and argued," rather than making its own findings of fact and conclusions of law, and therefore abused its discretion.

## IV. CONCLUSION

We **AFFIRM** the district court's judgment dismissing the plaintiff's complaint. However, we **REVERSE** the district court's judgment granting Rule 11 sanctions against Elsman, **VACATE** the court's Rule 11 order, and **REMAND** for further proceedings consistent with the requirements of Rule 11 and this opinion.

46 Fed.Appx. 792, 2002 WL 31007987 (6th Cir.(Mich.))

## Briefs and Other Related Documents (Back to top)

. 01-1544 (Docket)
                                    (Apr. 26, 2001)

. 00-2293 (Docket)
                                    (Nov. 01, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                    Page 1
1995 WL 704781 (D.Del.)
**(Cite as: 1995 WL 704781 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Caroline P. AYRES, Plaintiff,
v.
JACOBS & CRUMPLAR, P.A., Robert Jacobs,
Thomas C. Crumplar, and Douglas B.
Canfield, Defendants.
**Civ. A. No. 94-658-SLR.**

Nov. 20, 1995.
Caroline P. Ayres, plaintiff, pro se. Of counsel:
Clifford A. Boardman, Philadelphia, Pennsylvania.

Thomas S. Neuberger, Thomas S. Neuberger, P.A.,
Wilmington, Delaware; attorney for defendants.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

**\*1** Plaintiff Caroline Ayres, an attorney, has
brought this suit against her former employer,
Jacobs & Crumplar, and three individual partners,
Thomas Crumplar, Robert Jacobs, and Douglas
Canfield. She claims that defendants discriminated
against her on the basis of race and sex, sexually
harassed her, breached implied employment
contracts with her, defrauded her, defamed her, and
finally fired her wrongfully and in retaliation for her
opposition to defendants' treatment of her.

Defendants have moved for dismissal pursuant to
Rules 12(b)(4), 12(b)(5), and 4(m) of the Federal
Rules of Civil Procedure. For the reasons stated
below, defendants' motion will be granted.

II. BACKGROUND

Plaintiff was employed as an associate by
defendant law firm Jacobs & Crumplar from
December 1988 until August 1993. After filing a
complaint with the Equal Employment Opportunity
Commission and receiving a Notice of Right to Sue,
plaintiff filed this suit *pro se* on December 7, 1994.
[FN1] (D.I. 1) At that time plaintiff received a copy
of Rule 4 of the Federal Rules of Civil Procedure
and signed an acknowledgement stating that she
understood her responsibility to serve process
according to that rule. The court's docket reflects
the fact that no summons issued on the day the case
was filed.

On December 29, 1994, plaintiff engaged a runner
from TriState Courier and Carriage to serve the
complaints and unsigned summonses on defendants
at the office of Jacobs & Crumplar. (D.I. 3-9) The
process server left the summons and complaint for
each defendant with Donna Dobbs, the office
manager at Jacobs & Crumplar. (D.I. 3-9) Plaintiff
returned to the clerk's office on January 3, 1995 to
file the summonses and proofs of service. (D.I. 75
at 2) At that time, the clerk pointed out to plaintiff
that the summons had not been signed. (D.I. 75 at
2) The documents were accepted for docketing as
required by the Local Rules of Civil Practice and
Procedure. D.Del.L.R. 5.1.2.

Defendants filed an answer on January 18, 1995.
(D.I. 12) They appended to their answer a motion to
dismiss based in part on Rule 12(b)(4) and (5) of
the Federal Rules of Civil Procedure. The court
denied this motion because defendants had failed to
file a supporting brief as required by Local Rule
7.1.2. (D.I.19) The Rule 16 Scheduling Order
required all dispositive motions to be filed, along
with the required briefs, on or before September 12,
1995. (D.I. 14 at ¶ 6) The parties then embarked
upon a muddled and acrimonious discovery process.
On July 31, 1995, well before the deadline for
dispositive motions set by the court, defendants
moved again to dismiss, this time filing a brief in
accordance with the local rules. (D.I. 66, 67) On
September 19, 1995, the court granted a stay of
discovery pending decision on this motion. (D.I. 82)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 704781 (D.Del.)
**(Cite as: 1995 WL 704781 (D.Del.))**

## III. DISCUSSION

Defendants have based their motion to dismiss on two related but distinct grounds. First, they claim a deficiency in process due to plaintiff's failure to obtain the court clerk's signature on the summons. Second, defendants maintain that Donna Dobbs, the office manager at Jacobs & Crumplar, had no authority to accept service on behalf of the professional association or the individual defendants.

**\*2** In response, plaintiff argues that the "technical niceties of service of process" should be overlooked, or alternatively, that she should have another opportunity to serve process. Specifically, plaintiff claims that 1) the defect in the summons should be excused because the clerk accepted it for docketing; 2) service was proper because the office manager had apparent authority to accept it; and 3) defendants have waived any objections to the errors by not protesting them vigorously and continuously throughout the litigation process. Plaintiff does, however, acknowledge that defendants raised these issues in their responsive pleading.

### A. Standard for Dismissal Under FRCP 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court ... shall dismiss the action without prejudice ... or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Good cause for extending the time limit for service can be found only in a fairly narrow range of circumstances. As the Third Circuit has noted, the legislative history of the time extension clause reveals only one specific circumstance in which an extension would be proper: where the defendant has engaged in intentional evasion. *Lovelace v. Acme Markets, Inc.,* 820 F.2d 81, 84 (3d Cir.), *cert. denied,* 484 U.S. 965 (1987), *citing* 128 Cong.Rec. H9848, 9852 n. 25 (daily ed. Dec. 15, 1982). The court held a dismissal in the absence of good cause appropriate even where it deprived the plaintiff of

his day in court:

> "Half-hearted" efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run. Furthermore, when a delay is the result of inadvertence of counsel, it need not be excused.

*Id.* (citations omitted). *Accord Braxton v. Dep't of Health & Human Services,* 817 F.2d 238 (3d Cir.1987).

### B. Improper Service

Rule 4(e) of the Federal Rules of Civil Procedure provides that a competent adult individual within the United States may be served in person, or by leaving the summons and complaint with a competent adult at the individual's home, or by delivering the summons and complaint to "an agent authorized by appointment or by law to receive service of process."

Rule 4(h) permits corporations and associations to be served by delivery of the complaint and summons to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...."

As plaintiff has pointed out, the rules concerning service of process exist to provide notice. *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 486 (3d Cir.1993). That purpose is of primary importance and once it has been met, the rules can be construed somewhat liberally. However, "[a]lthough notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service." *Id.* at 492. *Accord United States v. Mollenhauer Labs, Inc.,* 267 F.2d 260, 262 (7th Cir.1959) (a liberal construction of the rules "cannot be used as a substitute for the plain legal requirement as to the manner in which service of process may be had.").

**\*3** In certain instances, good faith reliance on the apparent authority of an individual to accept service on behalf of a business has been found sufficient. *Direct Mail Specialists, Inc. v. Eclat Computerized*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 704781 (D.Del.)
**(Cite as: 1995 WL 704781 (D.Del.))**

Page 3

*Technologies, Inc.,* 840 F.2d 685 (9th Cir.1988); *Mazuren Int'l Co., Ltd. v. Bridgeport Merchandise, Inc.,* 770 F.Supp. 155 (S.D.N.Y.1991). The inquiry in such a case should focus on whether the individual's role in the organization made service on her "fair, reasonable, and just." *Direct Mail* at 688, *quoting Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237, 1251 (S.D.N.Y.1977).

Defendants have submitted an affidavit asserting that the office manager is not authorized by appointment to receive service on behalf of the professional association or of the individual partners. Plaintiff does not dispute this claim, but argues instead that she relied reasonably on the apparent authority of the office manager to accept service. Had plaintiff been a stranger to the firm of Jacobs & Crumplar, service on the office manager might well have been "fair, reasonable, and just." In this case, however, it is less appropriate for plaintiff to argue good faith reliance on the office manager's apparent authority to accept service. As plaintiff herself has stated in her affidavit, she is familiar with the duties of the office manager at Jacobs & Crumplar. [FN2] Therefore, she could have been expected to know that the office manager did not have actual authority to accept service on behalf of the partnership. Following the same reasoning, it is even less reasonable for plaintiff to assert that the office manager had apparent authority to accept service for defendants Jacobs, Crumplar, and Canfield individually.

C. Insufficient Process

Ordinarily, a defect in the form of a summons should not lead to dismissal unless it causes prejudice to the defendant or demonstrates a flagrant disregard for the rules. *See, e.g., Sanderford v. Prudential Ins. Co.,* 902 F.2d 897, 900 (11th Cir.1990) (omission of return date for responsive pleading not fatal); *Crane v. Battelle,* 127 F.R.D. 174, 177 (S.D.Cal.1989) (reversal of defendant's first and last names did not prejudice defendant; dismissal not proper). In such cases, the proper remedy is to allow the plaintiff to amend the summons as provided in Rule 4(a). *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975), *overruled on other grounds by Newcome v. Esrey,* 862 F.2d 1099 (4th Cir.1988); 4 Charles A. Wright & Arthur R.

Miller, *Federal Practice & Procedure* § 1088 (2d ed. 1986 & Supp.1995).

The omission of the seal of the court and signature of the clerk, however, are more serious defects. *Aim Telephones, Inc. v. AG Communications,* 1988 WL 133444 (D.N.J. Dec. 12, 1988); *Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348, 1358 (S.D.N.Y.1982). A litigant has no authority of her own to issue a summons. The court's seal and clerk's signature give the document its legal effect. In the absence of such assurances of authenticity, the defendant has no way of knowing that the court, rather than a plaintiff or attorney, has issued the summons. *Aim Telephones* at *2. The signature and seal are of such importance that service of an unsigned and unsealed summons is a strong indication of the sort of flagrant disregard for the rules that would justify dismissal. *Id.; Gianna Enterprises* at 1358.

*4 Plaintiff claims that the court should overlook her failure to obtain the clerk's signature on the summons because the clerk accepted the summons for docketing after noticing that it had not been signed. Her good faith reliance on that acceptance, she argues, indicates that she did not flagrantly disregard the rules.

Rule 4(a) of the Federal Rules of Civil Procedure clearly requires that the summons be signed by the clerk and bear the seal of the court. Local Rule 5.1.2. requires the clerk to accept for docketing even those papers that do not conform to the proper format, and Local Rule 4.1(a) states that "[f]ailure to provide a form of summons shall not be a basis to reject the pleading for filing." The Rules of Professional Conduct and the law of common sense both indicate that court clerks are not qualified to give legal advice, nor would it be reasonable for a licensed attorney to rely on a clerk's performance of a purely ministerial duty as an indication that a clear rule could be overlooked.

Plaintiff is a member of the Delaware bar and is also licensed to practice before this court. (D.I. 75 at Appendix ¶ 1) As such, she is presumed to understand the Federal Rules of Civil Procedure, Delaware's Rules of Professional Conduct, and the local court rules. In addition, plaintiff signed an acknowledgement on December 7, 1994 which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 704781 (D.Del.)
**(Cite as: 1995 WL 704781 (D.Del.))**

Page 4

stated, "I hereby acknowledge receipt of a copy of Rule 4 of the Federal Rules of Civil Procedure and understand that it is my responsibility to make service of process in accordance with the said rule." (emphasis added). Lack of knowledge of the rules does not constitute good cause under Rule 4(m) even for non-attorney *pro se* plaintiffs. *Kersh v. Derozier,* 851 F.2d 1509, 1512 (5th Cir.1988); *Ouzts v. Cummins,* 825 F.2d 1276, 1278 (8th Cir.1987). The court concludes, therefore, that plaintiff has not demonstrated good cause for her failure to comply with Rule 4. The court also finds that plaintiff has exhibited flagrant disregard for the rules. [FN3]

D. Waiver

Plaintiff contends that defendants have waived their defenses based on improper service by engaging in extensive discovery, attending scheduling conferences and depositions, and otherwise litigating the case while "say[ing] little to nothing" about plaintiff's error. She perceives defendants' motion as an attempt to "sandbag" her and to "trick the court into dismissing [the] action."

A defense based on improper service can be waived if the defendant fails to raise it either in a responsive pleading or in a pre-answer motion. Fed.R.Civ.P. 12(h). However, each of the long string of cases plaintiff cites in support of her "ambush" theory can be distinguished from the present case. In the cases cited, the defendants either failed to raise the issue in their responsive pleadings or waited too long to file a motion to dismiss on that basis. *See e.g., Norling v. Valley Contracting and Pre-Mix,* 773 F.Supp. 186 (D.N.D.1991) (defense not raised in answer); *Federal Home Loan Mortgage v. Dutch Lane Assoc.,* 775 F.Supp. 133 (S.D.N.Y.1991) (defendants' pre-answer motion did not include failure of service defense). Here, defendants raised the issue in a clear and timely manner in their answer and filed their motion to dismiss within the time limits set by the court.

**\*5** Plaintiff acknowledges that defendants did in fact raise the process and service issues in their answer, but complains that defendants' assertion of improper process and inadequate service was "buried" among fifty-five "boilerplate" defenses.

The court had no trouble locating the assertions in question, nor would anyone who had taken the time to read the answer. In addition, defendants' accompanying motion to dismiss on these grounds, despite the lack of a brief to accompany it, should have put plaintiff squarely on notice that the summons was improperly issued and improperly served. [FN4] Although defendants could have gone further in protesting plaintiff's errors in service, they were under no obligation to do so. Having received actual notice of the defects, plaintiff had the rest of the 120 day period to correct them. She chose not to do so. Consequently, the court concludes that defendants have not waived their service and process defenses.

IV. CONCLUSION

One hundred and twenty days is a generous amount of time, certainly enough for plaintiff to have corrected her errors had she chosen to do so. Plaintiff has provided no excuse for her failure to comply with the rule, other than the fact that she simply did not think the "technical niceties" of service of process important. Such disregard for the rules is inexcusable. Under these circumstances, the court can find no justification for permitting an amendment to the summons or for extending the deadline for service. Dismissal is therefore warranted. An order consistent with this memorandum opinion shall issue.

> FN1. Although plaintiff is still serving as her own local counsel in this case, she is also being represented *pro hac vice* by Mr. Boardman.

> FN2. There is actually some discrepancy as to what plaintiff knows. In her affidavit, plaintiff avers, "I ... knew Donna Dobbs personally and her job duties." (D.I. 75, Appendix A at ¶ 8) Defendants have submitted the affidavit of Ms. Dobbs, who states that she did not begin working as Jacobs & Crumplar's office manager until over a month after plaintiff had left the firm. (D.I. 78, Exhibit A at ¶ 3) Despite this inconsistency, the court will assume that plaintiff had some general knowledge of the duties of an office manager at Jacobs & Crumplar.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5
1995 WL 704781 (D.Del.)
**(Cite as: 1995 WL 704781 (D.Del.))**

> FN3. Significantly, despite the opportunity
> to do so, plaintiff has failed to correct the
> deficiencies asserted.

> FN4. The fact that plaintiff actually had
> notice that service and process were
> deficient is underscored by a letter in the
> case file from plaintiff dated February 13,
> 1995. The letter refers specifically to the
> portion of defendants' responsive pleading
> entitled "Motion to Dismiss" and notes that
> it is only five sentences long. Two of
> those five short sentences consist of
> defendants' assertions regarding inadequate
> service and process.

1995 WL 704781 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:94CV00658 (Docket)
                              (Dec. 07, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2000 WL 291537 (D.Del.)
(Cite as: 2000 WL 291537 (D.Del.))

Page 1

▷

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Joyce PARKER and Willie Parker, Plaintiffs,
v.
STATE of Delaware, Secretary Thomas Eichler,
Individually and as Agent for the
State of Delaware, Janet Kramer, Individually and
as Agent for the State of
Delaware, and Diane Gadow, Individually and as
Agent for the State of Delaware,
Defendants.
No. 98-445-SLR.

March 13, 2000.
Caroline Patricia Ayers, Wilmington, Delaware, for
Plaintiffs.

Michael F. Foster, and Keith R. Brady, Deputy
Attorneys General, Delaware Department of
Justice, Wilmington, Delaware, for State of
Delaware, Thomas Eichler, and Diane Gadow.

David H. Williams, of Morris, James, Hitchens &
Williams, Wilmington, Delaware, Michael J. Ossip,
and Robert C. Farley, Jr., of Morgan, Lewis &
Bockius LLP, Philadelphia, Pennsylvania, for Janet
Kramer, of counsel.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

**\*1** Currently before the court are motions to
dismiss filed by defendants the State of Delaware,
Secretary Thomas Eichler, Janet Kramer, and Diane
Gadow. (D.I.7, 14) Defendants seek dismissal of
plaintiffs Joyce and Willie Parker's complaint for,
*inter alia,* lack of personal jurisdiction. Plaintiffs
allege violations of Title VII, 42 U.S.C. § 2000e *et
seq.,* 42 U.S.C. § 1983, the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*

*seq.,* and a variety of state law claims including
Willie Parker's loss of consortium arising out of the
allegedly unlawful termination of his wife's
employment. Because plaintiffs failed to serve
defendants within the appropriate time period, the
court lacks personal jurisdiction over defendants
and it shall dismiss the complaint.

II. BACKGROUND

Prior to the termination of her employment, Joyce
Parker worked as a Registered Nurse for the
Delaware Division of Youth and Family Services at
the Ferris School. During her employment, she
allegedly was harassed and discriminated against on
the basis of her race, sex, and disability. On July 31,
1996, defendant Eichler fired her for allegedly
committing fraud. Plaintiff waited until May 30,
1997 to lodge a complaint with the Equal
Employment Opportunity Commission ("EEOC").
Because of her delay, the EEOC dismissed her
complaint in a December 18, 1997 notice of
dismissal. That notice specifically warned plaintiff
that it was "the only notice of dismissal and of your
right to sue that we will send you." It further
indicated that she had 90 days from receipt of the
notice to file a federal lawsuit based on Title VII
and/or the ADA. The notice was copied to plaintiffs'
attorney. (D.I. 15 Ex. 2)

Nonetheless, plaintiffs waited well beyond this
90-day time limit and filed the present complaint on
July 30, 1998. Based on this filing date, the 120-day
period for service of process expired on October 27,
1998. *See* Fed.R.Civ.P. 4(m). The docket reveals,
however, that summonses were not issued for any
defendant until December 28, 1998--nearly five
months after the filing of the complaint. Plaintiffs
did not serve Janet Kramer until May 6, 1999.
(D.I.4) According to the docket, plaintiffs have not
yet served any other defendant with a summons and
a copy of the complaint. [FN1]

> FN1. Defendants concede that plaintiffs
> served the Attorney General on March 15,
> 1999 and Diane Gadow on August 16,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 291537 (D.Del.)
**(Cite as: 2000 WL 291537 (D.Del.))**

Page 2

1999 (D.I. 15 at 6, 7), but the docket does not indicate any return of service. Moreover, this service was well beyond Rule 4(m)'s 120-day deadline.

On May 5, 1999, the court issued an order to show cause why plaintiffs' case should not be dismissed for want of service and failure to prosecute. (D.I.3) Plaintiffs responded through their counsel that they filed suit "within the statute of limitations time period" to "preserve [their] rights to pursue this matter at a later date." (D.I. 6 at 1) Apparently, plaintiffs sought state administrative relief following the filing of the present complaint. When this relief proved unsuccessful, plaintiffs caused summonses to be issued for defendants but, according to plaintiffs' counsel, service was not effected because defendants either refused service or were not present to accept service. (D.I. 6 at 1-2)

**\*2** Shortly after plaintiffs' response to the court's "show cause" order, defendants filed the instant motions to dismiss. The court delayed action on its order to show cause pending resolution of these motions. Although defendants raise several grounds for dismissal of plaintiffs' complaint, the court shall confine its analysis to plaintiffs' failure to properly serve defendants with summons and a copy of the complaint under Fed.R.Civ.P. 4(m).

## III. STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure provides:
> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period....

The Third Circuit has enunciated a two-pronged inquiry for determining whether to excuse a plaintiff's improper service and extend the time for effecting service. *See McCurdy v. American Bd. of Plastic Surgery,* 157 F.3d 191, 196 (3d Cir.1998). First, the court must determine whether good cause

exists for the failure to effect service in a timely manner. *See id.* If good cause exists, the court must grant an extension for service of process. *See id.* If not, the court may either dismiss the action or grant an extension in "the sound exercise of its discretion." *See id.*

## IV. DISCUSSION

Turning to the first prong of the test, plaintiffs have not shown good cause for their flagrant noncompliance with Rule 4(m)'s service deadline. Summonses were not issued until five months after plaintiffs filed their complaint and service was not effected until (at the earliest) May 6, 1999-- nearly seven months after the 120-day service deadline expired. Furthermore, the State of Delaware has yet to receive service of process. Plaintiffs argue that the delay was justified because they were attempting to exhaust their state administrative remedies. (D.I. 9 at 12) No court has recognized this excuse as good cause for failure to effect timely service. Indeed, nothing prevented plaintiffs from pursuing such administrative remedies while also complying with the service requirements of the Federal Rules of Civil Procedure. Because good cause does not exist for the delay, the court now must determine whether dismissal of the entire action is appropriate.

If plaintiffs had missed the service deadline by a mere matter of days, the court would be inclined to extend the service deadline. Here, however, plaintiffs did not even bother to cause summonses to be issued until five months after they filed their complaint. Thus, they missed the service deadline not by a matter of days, but several months (and, in one case, they did not serve the defendant at all). Where a plaintiff conducts service of process in such a half-hearted manner, the Third Circuit has not hesitated to affirm dismissal of the underlying action for failure to comply with Rule 4(m). *See, e.g., McCurdy,* 157 F.3d at 196; *Lovelace v. Acme Markets, Inc.,* 820 F.2d 81, 84 (3d Cir.1987). Although plaintiffs argue that dismissal would be unjust because of "possible statute of limitations problems," the Third Circuit also has explained that the running of the limitations period does not compel the court to grant an extension of the service deadline. *See Petrucelli v. Bohringer & Ratzinger, GMBH,* 46 F.3d 1298, 1306 (3d Cir.1995).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 291537 (D.Del.)
**(Cite as: 2000 WL 291537 (D.Del.))**

Page 3

Extension is particularly inappropriate in the present case because plaintiffs failed to file their complaint within the 90-day "right to sue" period for Title VII and ADA actions. Thus, it is likely that much of the complaint would be dismissed anyway.

**\*3** Accordingly, the court shall dismiss the complaint for lack of personal jurisdiction over defendants.

V. CONCLUSION

The court shall grant defendants' motions to dismiss for lack of personal jurisdiction. An appropriate order shall issue.

2000 WL 291537 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2003 WL 23112306 (D.Del.)
(Cite as: 2003 WL 23112306 (D.Del.))

**c**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Paul RITTER, Plaintiff
v.
Anthony COOPER, II and Mary Cooper,
Defendants.
**No. Civ.A. 02-1435 GMS.**

Dec. 30, 2003.

Gordon L. McLaughlin, Law Office of Gordon L.
McLaughlin, Wilmington, DE, for Plaintiff.

David G. Culley, Tybout, Redfearn & Pell,
Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

**\*1** On August 26, 2002, the plaintiff, Paul Ritter,
filed a Complaint (D.I.1) against the defendants,
Anthony Cooper, II and Mary Cooper (collectively
the "Coopers"), alleging that Anthony Cooper's
negligent and reckless operation of a motor vehicle
registered to Mary Cooper, his mother, caused a
collision which resulted in injury to Ritter. Ritter
effectuated service upon Mr. Cooper on March 21,
2003. Presently before the court is the Coopers'
motion to quash service and to dismiss the action
against both defendants, or alternatively, to dismiss
the complaint against Mary Cooper for failure to
state claim (D.I.13). Ritter does not contest the
argument made by the Coopers that Ms. Cooper
should be dismissed from this action. That portion
of the motion therefore will be granted. Having
considered the parties' submissions, for the
following reasons, the court will deny the balance of

the Coopers' motion.

II. BACKGROUND

On August 26, 2000, Ritter and Mr. Cooper were
involved in an automobile accident which resulted
in Ritter's filing of the present action. Prior to filing
the Complaint, Ritter had been working with Mr.
Cooper's insurance company to settle the claim.
When it appeared that the claim would take longer
than two years [FN1] to resolve, although he was
still in the process of working with Mr. Cooper's
insurance adjuster, Ritter filed the Complaint in
order to toll the statute of limitations. Ritter did not
attempt to effectuate personal service of process
upon Mr. Cooper after filing the Complaint.
Instead, Ritter sent Mr. Cooper a copy of the
Summons, Complaint, Civil Cover Sheet and
Waiver of the Summons/Service of Process via
regular mail and also via certified mail at the
address listed on the Complaint and on the police
report from the accident. Ritter claims that he did
not want to incur the expense associated with hiring
a process service to formally serve Mr. Cooper
because Mr. Cooper had not disputed liability for
the accident and the parties were still attempting to
resolve the claim through the adjuster. Although the
copy of the Summons, Complaint, Civil Cover
Sheet and Waiver of the Summons/Service of
Process were not returned to Ritter as sender, Mr.
Cooper contends that he never received the mailing.
In addition, Ritter admits that the certified mail
receipts were never returned to him, despite his
repeated attempt to track the mailing. Neither of the
parties dispute, however, that the address listed on
the Complaint and on the police report is Mr.
Cooper's correct address. Nor do the parties dispute
that Mr. Cooper had actual notice that Ritter had
filed the Complaint. Indeed, Mr. Cooper's attorney
sent Ritter's attorney a letter on March 14, 2003
requesting an extension to answer.

> FN1. The statute of limitations on Ritter's
> tort claim is two years under Delaware law.

After Ritter did not effectuate service within the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23112306 (D.Del.)
**(Cite as: 2003 WL 23112306 (D.Del.))**

120 days provided for by Rule 4, the court issued an order to Ritter on February 24, 2003 to show good cause, within 30 days, as to why the action should not be dismissed. Upon receipt of the court's order, Ritter's attorney proceeded to properly effectuate personal service on Mr. Cooper on March 21, 2003. Ritter then apprised the court of that event in a letter dated March 25, 2003.

**\*2** The Coopers now move to quash service and dismiss the Complaint without prejudice, asserting that Ritter cannot show good cause for having failed to serve Mr. Cooper within 120 days. In his opposition, Ritter contends the lack of personal service caused no prejudice to Cooper for two reasons. First, he claims that the parties were engaged in ongoing settlement negotiations. Second, he asserts that Mr. Cooper had actual notice of the Complaint. Thus, Ritter argues that Mr. Cooper was not prejudiced by the lack of personal service, and that good cause is established for the court to extend the time limit to effect service pursuant to Rule 4.

The Coopers alternatively move to dismiss the Complaint against Ms. Cooper for failure to state a claim upon which relief can be granted. The basis for Ritter's claim against Ms. Cooper is that she is the owner of the vehicle Mr. Cooper was operating at the time of the accident. The Coopers, however, correctly point out that Delaware law does not recognize a cause of action against the mere owner of a vehicle unless the driver was a minor at the time or the plaintiff has alleged facts that give rise to a claim of negligent entrustment. Ritter has not alleged any such facts and stipulates in his reply brief that he does not have a claim against Ms. Cooper. Therefore, the court will dismiss the action against Ms. Cooper.

**III. STANDARD OF REVIEW**

The Coopers have moved to dismiss the Complaint because Ritter failed to effect personal service upon them in accordance with Federal Rule of Civil Procedure 4(m). Rule 4(m) states in pertinent part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to

that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.
Fed.R.Civ.P. 4(m). The determination whether to extend time to effect personal service pursuant to Rule 4(m) involves a two-step inquiry. *Boley v. Kaymark,* 123 F.3d 756, 758 (3d. Cir.1997). First, the court must determine whether good cause exists for the plaintiff's failure to effect timely service. *Id.* If good cause exists, the court must grant the extension. *Id.* If good cause does not exist, the court then must consider whether to grant a discretionary extension of time in the interest of justice. *See id.*

**IV. DISCUSSION**

A. Ritter has not established good cause for failing to properly effect personal service upon the Coopers within 120 days.

Courts have considered three factors in determining the existence of good cause: (1) reasonableness of the plaintiff's efforts to serve, (2) prejudice to the defendant by lack of timely service, and (3) whether the plaintiff moved for an enlargement of the time to serve. *United States v. Nuttall,* 122 F.R.D. 163, 166-67 (D.Del.1988). In weighing these factors, the court's "primary focus" should be on the plaintiff's "reasons for not complying with the time limit in the first place." *Boley,* 123 F.3d at 758 (quoting *MCI Telecomm. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1098 (3d Cir.1995), *cert. denied,* 519 U.S. 815, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996)). Ritter's explanation for not effecting service on Mr. Cooper within the 120 days provided for by Rule 4(m) is that he attempted instead to mail the waiver of service to Mr. Cooper in hopes of saving the expense of hiring a process server. Ritter also suggests that his failure to effect service upon Mr. Cooper within 120 days is justified by the parties' ongoing settlement negotiations.

**\*3** The court does not find that Ritter's explanation rises to the level of good cause. In particular, after he did not receive the return of service receipts from the waiver mailing, Ritter made no further efforts to ensure that Mr. Cooper in fact received the waiver and/or was properly served within 120 days. [FN2] Moreover, the fact that the parties were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23112306 (D.Del.)
(Cite as: 2003 WL 23112306 (D.Del.))

actively trying to resolve the claim through Mr. Cooper's insurance adjuster does not excuse Ritter's failure to serve Mr. Cooper. Ritter did not move the court for an enlargement of time to serve before the expiration of 120 days. It was only after the court brought the matter to Ritter's attention that he properly served the Complaint on Mr. Cooper. Although there is no evidence that Mr. Cooper will be prejudiced by Ritter's failure to serve, given the reasons for this failure, the court cannot find good cause to extend the time period for service.

> FN2. Ritter's attorney claims that he attempted to find out through the postal system what happened to the mailing, but he never resent the papers.

B. The court nonetheless determines that it serves the interests of justice to allow Ritter an extension beyond the 120 day period set forth in Rule 4(m) and therefore deem Mr. Cooper to have been properly served.

Even in the absence of good cause, however, Rule 4(m) permits the court discretion to extend the time for service. *Boley*, 123 F.3d at 758. "When deciding whether to exercise its discretion, a court may consider the following factors: '(1) [sic] frivolousness [of the plaintiff's complaint]; (ii) [the plaintiff's] motivation in pursuing its claims; (iii) objective unreasonableness (both in the factual and legal components of the case) and (iv) the need in particular circumstances to advance considerations of compensation and deterrence.' " *E.I. Du Pont De Nemours & Co. v. The New Press, Inc.*, No. Civ. A. 97-6267, 1998 WL 355522, *4 (E.D.Pa. June 29, 1998) (quoting *Pickens v. Interncommunity Agency, Inc.*, No. Civ. A. 96-8415, 1997 WL 727604, *7 (E.D.Pa. Nov.21, 1997) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986))). To the extent that these considerations apply to the present situation, the court finds them to weigh in favor of excusing Ritter's failure to personally serve Mr. Cooper within 120 days.

In making this determination, the court relies on several factors. By all accounts, Ritter's claim against Mr. Cooper is not frivolous. Neither party contests that the accident happened, nor that there is a genuine issue as to liability. Additionally, the court finds that Ritter's failure to effect personal service on Mr. Cooper was not motivated by any bad faith. Instead, Ritter genuinely sought to avoid further expense and settle the claim through the insurance adjuster, rather than being forced to litigate it in court. Furthermore, once Ritter was made aware by the court that his 120 days to serve the Complaint had expired, his counsel acted quickly and diligently to remedy the situation by properly serving the Complaint on Mr. Cooper at that time and apprising the court of his efforts.

*4 Also significant to the court's exercise of discretion is its finding that Mr. Cooper would not be prejudiced by excusing Ritter's untimely service of the Complaint. Indeed, Mr. Cooper had actual notice of Ritter's Complaint, and "actual notice to a defendant that an action was filed militates against a finding of prejudice." *Boley*, 123 F.3d at 759. On March 14, 2003-within 120 days from Ritter's filing of the Complaint-Mr. Cooper's attorney sent Ritter's attorney a letter requesting an extension to answer. The fact that Mr. Cooper had actual notice of the Complaint precludes any finding that Mr. Cooper would be prejudiced by the court's excusal of Ritter's untimely service.

Were the court not to excuse Ritter's untimely serving of the Complaint, Ritter, on the other hand, would be prejudiced in his claim. In particular, "the running of the statute of limitations is a factor supporting the discretionary granting of an extension of time to make service under Rule 4(m)." *Id.* at 759. Although the court will not determine at this time that the statute of limitations on Ritter's cause of action will have expired if the Complaint is dismissed, there is at least a colorable argument substantiating such a position. Given the absence of any prejudice to Mr. Cooper and the substantial risk of prejudice to Ritter, the court finds that it would be unjust to deprive Ritter of the opportunity to prove his claim by dismissing his complaint for failure to effectuate personal service.

V. CONCLUSION

Although the court does not find that Ritter has established good cause so as to require a mandatory extension of time under Rule 4(m), it nonetheless will exercise its discretion in the interests of justice and excuse Ritter's untimely service.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 23112306 (D.Del.)
**(Cite as: 2003 WL 23112306 (D.Del.))**

Page 4

*ORDER*

For the reasons set forth in the court's Memorandum of this date, IT IS HEREBY ORDERED that:

1. The defendant Anthony Cooper, II is deemed properly served as of March 21, 2003.

2. The Complaint (D.I.1) is dismissed with prejudice as to defendant Mary Cooper for failure to state a claim against her pursuant to Federal Rule of Civil Procedure 12(b)(6).

3. The defendant Anthony Cooper, II shall have 20 days from the date of this order to answer the Complaint (D.I.1).

2003 WL 23112306 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:02CV01435  (Docket)

(Aug. 26, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2004 WL 609327 (D.Del.)
**(Cite as: 2004 WL 609327 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Tony A. WILSON, Plaintiff,
v.
PINKERTON, INC., Dennis R. Brown, David
Merkovich, Kenneth E. Ford, Dave
Stebbins, Anthony Daunoras, Reid Adams, and Len
Kuminski, Defendants.
**No. Civ.A. 99-896 JJF.**

March 23, 2004.
Tony A. Wilson, Jacksonville, Florida, Plaintiff,
pro se.

David E. Brand, of Prickett, Jones & Elliot, P.A.,
Wilmington, Delaware, James A. Rothschild, of
Anderson, Coe & King, LLP, Baltimore, Maryland,
for Defendant Pinkerton, Inc., of counsel.

*OPINION*

FARNAN, J.

**\*1** Presently before the Court is Defendant's
Motion To Dismiss. (D.I.32.) For the reasons
discussed, the Court will deny the Motion.

BACKGROUND
Plaintiff filed the instant lawsuit on December 16,
1999, alleging employment discrimination. The
initial Complaint was never served on any of the
eight Defendants. The Court granted Plaintiff leave
to proceed *in forma pauperis* on February 22, 2002.
(D.I. 5 .) Plaintiff filed an Amended Complaint on
April 4, 2002, which was served on Defendant
Pinkerton, Inc. ("Pinkerton"). The Court entered an
Order on January 15, 2003, setting the fact
discovery deadline for March 20, 2003, and
scheduled a status conference for March 27, 2003.
Plaintiff failed to appear at the status conference.
On April 4, 2003, the Court entered an Order
directing Plaintiff to provide a written explanation
for his failure to respond to Pinkerton's discovery

requests and failure to appear at the March 27 status
conference. On April 5, 2003, Plaintiff informed the
Court by letter (the "April 5th letter") that his
failure to appear at the status conference was due to
the fact that he did not receive a copy of the Court's
January 15, 2003, Order. In addition, in the April
5th letter Plaintiff stated that he responded to
Pinkerton's discovery requests on March 24, 2003,
and supplemented his responses on April 4, 2003.

On August 7, 2003, Pinkerton sent Plaintiff a
notice of deposition, scheduling Plaintiff's
deposition for September 4, 2003, via Federal
Express. Plaintiff's wife refused receipt of the
notice. (D.I. 33 at Ex. B.) Pinkerton subsequently
renoticed the deposition by registered mail.
However, the registered mail was returned with
stamps indicating that the mail was unclaimed. *Id.*
at Ex. C. Plaintiff did not appear at the deposition
Pinkerton scheduled for September 4, 2003. By an
October 8, 2003, Memorandum Order (D.I.30), the
Court granted Pinkerton's request to file a motion to
dismiss for failure to prosecute.

DISCUSSION
I. Parties' Contentions

Pinkerton contends that the Court should grant its
Motion to Dismiss with prejudice because Plaintiff
has failed to prosecute his claim, appear at his
deposition, or cooperate in Pinkerton's efforts in
discovery. Pinkerton also contends that the
numerous periods of extended inactivity in this case
warrant dismissal for failure to prosecute. In
addition, Pinkerton contends that Plaintiff has not
served the seven individually named Defendants
with the Amended Complaint, and thus, the Court
should dismiss those Defendants pursuant to Rule
4(m) and 41(b).

Plaintiff responds that his failure to attend the
status conference was attributable to the fact that he
did not receive the Court's Order scheduling the
conference. Plaintiff contends that he has not
requested discovery from the Defendants because
there was a motion to dismiss pending before the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609327 (D.Del.)
**(Cite as: 2004 WL 609327 (D.Del.))**

Court. Plaintiff maintains that he believed it was improper to request discovery while a motion to dismiss was pending. Further, Plaintiff contends that he did serve the individually named Defendants by filing the U.S. Marshall-285 forms with the Clerk of the Court.

## II. Applicable Legal Principles

**\*2** Dismissal with prejudice is a harsh remedy "only appropriate in limited circumstances." *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 870 (3d Cir.1994) . Courts should be cautious in granting dismissals " '[b]ecause an order of dismissal deprives a party of its day in court[.]" ' *Id.* (quoting *Scarborough v. Eubanks,* 747 F.2d 871, 875 (3d Cir.1984)). Third Circuit precedent requires courts to evaluate six factors when determining whether a complaint should be dismissed with prejudice for failure to prosecute. Among these factors are:
   (1) the extent of the *party'* s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.
*Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984) (emphasis in original). When evaluating the *Poulis* factors, courts should resolve doubts in favor of deciding a case on the merits. *Adams,* 29 F.2d at 870. However, each factor need not be present in order for dismissal to be warranted. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 222 (3d Cir.2003) (citing *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988)).

## III. Decision

A. *Whether The Court Should Dismiss Pinkerton For Failure To Prosecute*

With respect to the first *Poulis* factor, the Court finds that any delays or failures to comply with discovery obligations or court orders are in most instances attributable to Plaintiff. Because Plaintiff is proceeding pro se, any failure to prosecute cannot

be blamed on inattentive counsel. *See Emerson v. Thiel College,* 296 F.3d 184 (3d Cir.2002).

Second, the Court finds that Pinkerton is minimally prejudiced by Plaintiff's failure to efficiently prosecute his case. Pinkerton's claim of prejudice is based upon the fact that the alleged events occurred in 1997, and therefore, Pinkerton contends that it will be unfairly prejudiced because it must defend against events that took place seven years ago. (D.I. 33 at 10.) Although the Court recognizes the difficulty in litigating cases involving events long past, the Court concludes that such prejudice alone does not substantially weigh in favor of dismissal because Pinkerton does not assert that Plaintiff's delay resulted in incurable burdens and costs, or caused it to suffer the "irretrievable loss" of key evidence. *Adams,* 29 F.3d at 873-74.

Looking to the third and fourth *Poulis* factors, the Court observes that there is evidence of dilatoriness; [FN1] however, the Court cannot find that Plaintiff's actions were, for the most part, willful or in bad faith. Although the Court is mindful that Plaintiff is not relieved of his obligations under the Federal Rules or from complying with court orders merely because he is proceeding pro se, in this case, Plaintiff has offered reasonable explanations for two of the most egregious instances of non-compliance. Plaintiff's explanation for his failure to appear at the Rule 16 conference on March 20, 2003, was that he did not receive notice of the hearing. Taken at face value, this is not evidence of bad faith or willfulness. Next, even though Plaintiff's failure to appear at his deposition appears to be the result of his refusal to accept delivery of Pinkerton's noticing of his deposition (D.I. 28, 33 at Ex. C), evaluating Plaintiff's actions in favor of deciding this case on the merits, *see Adams,* 29 F.2d at 870, the Court cannot find that Plaintiff's failure to appear at his deposition, the date and time of which he had no knowledge of, was "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith[.]" ' *Id.* at 875 (quoting *Scarborough v. Eubanks,* 747 F.2d 871, 875 (3d Cir.1984)).

   FN1. There are substantial periods of inactivity following Plaintiff's filing of his initial complaint on December 16, 1999.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609327 (D.Del.)
**(Cite as: 2004 WL 609327 (D.Del.))**

Following the Court's grant of *in forma pauperis* status on February 22, 2002, there was no activity until April 4, 2002, when Plaintiff filed his Amended Complaint. Between August 21, 2002, and April 10, 2003, Plaintiff again took no action in the prosecution of his case. It was not until the Court, in an April 4, 2003, Order directed Plaintiff to provide a written explanation for his failure to appear at the status conference and failure to participate in discovery that Plaintiff took any affirmative steps toward the prosecution of his case.

**\*3** Next, the Court concludes that the fifth factor weighs in favor of dismissal. Because the Court granted Plaintiff *in forma pauperis* status, an assessment of attorneys' fees and costs against Plaintiff for his failure to cooperate in discovery is not feasible. *Emerson,* 296 F.3d at 191. Further, on the undeveloped record in this case, the Court is unable to craft an appropriate evidentiary sanction for Plaintiff's delays.

Turning to sixth factor, the Court cannot reach a determination of whether the meritoriousness of the parties' claims or defenses weighs in favor or against dismissal. As Pinkerton states in its papers, at this stage of the proceedings the undeveloped record prevents any such findings. (D.I. 33 at 11.)

After weighing the *Poulis* factors, the Court concludes that the factors weigh against dismissal. Although the Court finds that Plaintiff is responsible for the delays in this case, that there is a history of dilatoriness, and that there is an absence of alternative sanctions, the Court concludes that the presumption against dismissal requires the Court to deny the instant motion. The Court's findings that Pinkerton will not suffer unfair prejudice and that Plaintiff did not act willfully or in bad faith in failing to cooperate with the Court's orders or the Federal Rules, persuades the Court that the harsh penalty of dismissal with prejudice is inappropriate at this time. In the Third Circuit, "[d]ismissal must be a sanction of last, not first, resort." *Poulis,* 747 F.2d at 869. And, as Plaintiff has represented to the Court that he will agree with Pinkerton to a mutually acceptable time for his deposition and fully comply with his obligations under the Federal Rules and Court orders, the Court will grant him a final opportunity to properly prosecute his case.

**B.** *Whether The Court Should Dismiss The Individual Defendants*

Plaintiff contends that he filed with the Clerk of the Court U.S. Marshall-285 forms for each Defendant; however, the Court's docket reveals that Plaintiff only served Defendant Pinkerton. Rule 4(m) of the Federal Rules of Civil Procedure provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant ...; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m).

Because the Court has no evidence that Plaintiff properly served the individual Defendants with his Amended Complaint, the Court directs Plaintiff to provide the Court with evidence of his return of the U.S. Marshall-285 forms to the Clerk or to show good cause for his failure to serve each Defendant. If Plaintiff does not provide the evidence of his return of the U.S. Marshall-285 forms or demonstrate good cause for failure to serve, the Court will dismiss the individual Defendants.

**\*4** In sum, the Court concludes that dismissal is not warranted at this time; however, failure of the Plaintiff to diligently pursue his claims in the future will be evaluated against the backdrop of the circumstances the Court has reviewed here.

An Order consistent with this Opinion will be entered.

*ORDER*

At Wilmington, this 23rd day of March 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion To Dismiss (D.I.32) is *DENIED.*

2004 WL 609327 (D.Del.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 609327 (D.Del.)
**(Cite as: 2004 WL 609327 (D.Del.))**

Page 4

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.