IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT T. FLOYD                          :
                                         :
         Plaintiff,                      :
                                         :
    v.                                   : Civil Action No. 04-944 JJF
                                         :
SATURN OF NEWARK and GENERAL MOTORS      :
ACCEPTANCE CORPORATION,                  :
                                         :
         Defendants.                     :

---

Robert T. Floyd, Darby, Pennsylvania.
<u>Pro Se</u> Plaintiff.

Linda Richenderfer, Esquire of SAUL EWING, LLP, Wilmington, Delaware.
<u>Of Counsel</u>: Kimberly A. Manuelides, Esquire and Stacey L. Marktin, Esquire of SAUL EWING, LLP, Baltimore, Maryland.
Attorneys for Defendant General Motors Acceptance Corporation.

Danielle Yearick, Esquire of TYBOUT, REDFEARN & PELL, Wilmington, Delaware.
Attorney for Defendant Saturn of Newark.

---

**MEMORANDUM OPINION**

July 11, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Renewed Motion To Dismiss (D.I. 8) filed by Defendant General Motors Acceptance Corporation ("GMAC"). For the reasons discussed, the motion will be granted.

## BACKGROUND

### I. Factual Background

This lawsuit arises from an automobile lease that Plaintiff Robert T. Floyd entered into in May 2001 with Defendant GMAC, and his subsequent purchase of two automobiles from Defendant Saturn of Newark.

In May 2001, Mr. Floyd leased a red 2001 Saturn automobile from Saturn of Newark, a car dealership located in Newark, Delaware. Mr. Floyd entered into a lease agreement with GMAC, which financed the lease. Pursuant to the terms of the lease agreement, the lease was scheduled to terminate in August 2004 and Mr. Floyd would have an option to purchase the vehicle at that time. Mr. Floyd alleges that, in February 2004, he approached a sales agent at Saturn of Newark with regard to exercising his right to purchase the leased vehicle. The sales agent allegedly told Mr. Floyd that the price was too high. Further, the sales agent allegedly told Mr. Floyd that, when there were five remaining months on the lease, GMAC would send Mr. Floyd a letter excusing the final five lease payments should Mr. Floyd purchase a new automobile. Mr. Floyd further alleges

1

that the sales agent told him that he would not have to worry about paying for excess mileage on the leased vehicle.

On May 27, 2004, Mr. Floyd returned to Saturn of Newark allegedly because only four payments remained on the lease, yet Mr. Floyd had not received the letter from GMAC the sales agent promised. During the May 27 visit, the sales agent convinced Mr. Floyd to purchase a gold 2004 Saturn automobile, which Mr. Floyd financed through a loan with Sun Trust bank. Mr. Floyd turned in the leased 2001 Saturn to Saturn of Newark at that time. The sales agent then told Mr. Floyd that he may have to pay for excess mileage on the leased vehicle.

GMAC subsequently billed Mr. Floyd $3,047 for excess mileage on the leased vehicle. On June 2, 2004, Mr. Floyd sent a letter to GMAC indicating his desire to re-acquire the 2001 leased vehicle and to purchase it at the end of the lease term. On June 3, 2004, Mr. Floyd again wrote to GMAC stating his belief that he had a legal right to possess the leased vehicle until August 2004. On June 10, 2004, GMAC allegedly sent a letter to Mr. Floyd stating that the vehicle had been sold. (D.I. 7 at 3.)

On June 10, 2004, Mr. Floyd returned the gold 2004 automobile to Saturn of Newark. Mr. Floyd alleges that he was subsequently denied credit by other dealerships because the new car loan from Sun Trust bank appeared on his credit report. On June 14, 2004, Mr. Floyd returned to Saturn of Newark and

purchased a red 2004 Saturn automobile, again financing it through Sun Trust bank. Mr. Floyd alleges that both Sun Trust loans ran concurrently until the loan for the gold 2004 Saturn "fell into late status," damaging Mr. Floyd's credit rating. (D.I. 7 at 3.)

## II. Procedural History

On August 16, 2004, Mr. Floyd filed a pro se lawsuit against GMAC and Saturn of Newark. The Court construes Mr. Floyd's Complaint (D.I. 1) to allege violations of the Truth In Lending Act, 15 U.S.C. § 1601 et seq., the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq., breach of contract, and common law fraud.

On September 7, 2004, GMAC filed a Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 4). On September 10, 2004, Mr. Floyd filed a "More Definite Statement" (D.I. 7) to clarify his claims. In the Statement, Mr. Floyd contends that GMAC is liable to him for breach of contract and fraud, and that Saturn of Network is liable to him for the alleged fraudulent conduct of its sales agent. Mr. Floyd seeks damages of $20,000.

In response to Mr. Floyd's Statement, GMAC filed a Renewed Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**PARTIES' CONTENTIONS**

By its motion, GMAC contends that this lawsuit should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the court lacks subject matter jurisdiction to hear it. Specifically, GMAC contends that the Court lacks subject matter jurisdiction based on diversity of citizenship because the amount in controversy is less than $75,000. Further, GMAC contends that the Complaint fails to state a claim under either the Truth in Lending Act or the Equal Credit Opportunity Act and, therefore, the Court lacks federal question subject matter jurisdiction over this matter. GMAC further contends that Mr. Floyd has alleged no facts upon which a claim of fraud may be lodged against GMAC and that the common law fraud claim against it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Mr. Floyd did not file a response to GMAC's motion.

**DISCUSSION**

**I.   Legal Standard**

GMAC moves the Court to dismiss Mr. Floyd's claims against it pursuant to Federal Rules 12(b)(1) and 12(b)(6).

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of

merit as not to involve a federal controversy." <u>Coxson v. Comm. of Pennsylvania</u>, 935 F.Supp. 624, 626 (W.D. Pa. 1996) (citations omitted). Additionally, a motion to dismiss under 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. and Loan</u>, 549 F.2d 884, 891 (3d Cir. 1977). The instant case presents a facial challenge because GMAC does not dispute the existence of the jurisdictional facts alleged in the Complaint. Therefore, the Court must accept the facts alleged in the Complaint as true, and draw all reasonable inferences in favor of Mr. Floyd. <u>See</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 118 (1990); <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Strum v. Clark</u>, 835 F.2d 1009, 1011 (3d Cir. 1987). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." <u>Strum</u>, 835 F.2d at 1011; <u>see also</u> <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Jordan</u>, 20 F.3d at 1261.

**II. Whether The Court Has Subject Matter Jurisdiction**

A.   <u>Diversity Of Citizenship</u>

A federal court has subject matter jurisdiction based on diversity of citizenship when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332 (2005).

In his Complaint (D.I. 1), Mr. Floyd alleges that he is a citizen of Pennsylvania, Saturn of Newark is a citizen of Delaware, and GMAC is a citizen of Michigan. GMAC does not dispute Mr. Floyd's allegations with regard to the parties' citizenship. Rather, GMAC contends that the Court lacks diversity jurisdiction because the amount in controversy is less than $75,000.

Accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of Mr. Floyd, as the Court must when analyzing a motion to dismiss, the Court concludes that Mr. Floyd has established diversity of citizenship among the parties. However, Mr. Floyd has not satisfied the jurisdictional amount in controversy. In determining the jurisdictional amount, "the sum claimed by plaintiff controls if the claim is apparently made in good faith." <u>St. Paul Mercury</u>

6

Indemnification Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). Dismissal is only appropriate if the court is certain that the jurisdictional amount cannot be met and the claims are insubstantial on their face. In re LifeUSA Holding Inc., 242 F.3d 136, 143 (3d Cir. 2001). Once the defendant challenges the plaintiff's allegations regarding the amount in controversy, the plaintiff must produce sufficient evidence to satisfy his or her claims related to the jurisdictional amount. Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997).

In this case, Mr. Floyd alleges that he is entitled to $20,000 in damages. (D.I. 7.) Thus, Mr. Floyd has not satisfied the $75,000 threshold to support the exercise of diversity jurisdiction. Further, Mr. Floyd has not responded to GMAC's Renewed Motion To Dismiss, and thus, has failed to come forward with facts necessary to support diversity jurisdiction. Accordingly, the Court concludes that Mr. Floyd's allegations fail to support diversity jurisdiction.

B.   Federal Question

Pursuant to 28 U.S.C. § 1331, federal courts have federal question jurisdiction over "cases in which a well pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1,

27-28 (1983).

1.   Truth In Lending Act

In his Complaint, Mr. Floyd alleges that "[g]oods leased to consumers are covered by chapter 5 of the Truth in Lending Act and FTC's regulation M . . . ."  (D.I. 1 at 2.)

The Consumer Leasing Act ("CLA") was enacted in 1976 as an amendment to the Truth In Lending Act ("TLA"), 15 U.S.C. § 1601. The CLA extends the TLA's credit disclosure requirements to consumer leases; its primary purpose is to "assure a meaningful disclosure of the terms of leases . . . so as to enable the lessee to compare more readily the various lease terms available to him."  15 U.S.C. § 1601(b).  Because lease financing had become an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate."  Id.  The CLA thus requires lessors of personal property to make certain disclosures "in a clear and conspicuous manner" upon entering into a lease.  15 U.S.C. § 1667a.  The CLA applies to all leases for the use of "personal property" having a term "exceeding four months" that have a "total contractual obligation not exceeding $25,000."  15 U.S.C. § 1667(1).  Neither party disputes that the CLA applies to Mr. Floyd's lease. The statute creates a private right of action against lessors who breach the disclosure requirements.  See 15 U.S.C. § 1667d; 15

U.S.C. § 1640.

In passing the CLA, Congress also delegated to the Federal Reserve Board authority "to issue regulations 'to update and clarify the requirements and definitions applicable to lease disclosures' " and to publish "model disclosure forms to facilitate compliance with [the statute's] requirements." 15 U.S.C. § 1667f(a)(1), (b)(1). Those regulations, collectively referred to as "Regulation M", are codified at 12 C.F.R. § 213. Courts are to defer to these regulations and associated commentary when interpreting the TLA so long as they are "not irrational." See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 560 (1980).

In pertinent part, the CLA requires a lessor to disclose in writing at the inception of a lease:

> (4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;
> (5) A statement of the amount or method of determining the amount of any liabilities the lease imposes upon the lessee at the end of the term and whether or not the lessee has the option to purchase the leased property and at what price and time;
>                    \* \* \* \*
> (11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination.

9

15 U.S.C. § 1667a.

Regulation M states in pertinent part that the lessor shall disclose the following information:

> (d) Other charges. The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. . . .
> (g) Early termination--
> (1) Conditions and disclosure of charges. A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term; and the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable. . . .
> (h) Maintenance and repair - . . .
> (2) Wear and use standard. A statement of the lessor's standards for wear and use (if any), which must be reasonable; and
> (3) Notice of wear and use standard. In a motor-vehicle lease, a notice regarding wear and use substantially similar to the following: "Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use." The notice shall also specify the amount or method for determining any charge for excess mileage.
> (i) Purchase option. A statement of whether or not the lessee has the option to purchase the leased property, and:
> (1) End of lease term. If at the end of the lease term, the purchase price; and
> (2) During lease term. If prior to the end of the lease term, the purchase price or the method for determining the price and when the lessee may exercise this option.

12 CFR § 213.4.

Viewing the Complaint (D.I. 1) and the subsequent "More Definite Statement" (D.I. 7) in view of the CLA and Regulation M, the Court concludes that Mr. Floyd has failed to state a claim pursuant to the TLA. Nowhere does Mr. Floyd allege that GMAC failed to disclose terms in the lease agreement at the time the

parties entered into the lease for the 2001 Saturn. In fact, Mr. Floyd alleges that the lease agreement in Paragraph 20 states that he had a contractual right to purchase the 2001 vehicle "only at scheduled lease end." (D.I. 7 at 2.) The lease was scheduled to end in August 2004. Mr. Floyd alleges that he returned the leased vehicle to Saturn of Newark on May 27, 2004. On June 2, 2004, Mr. Floyd wrote to GMAC expressing his desire to re-acquire the leased vehicle and to purchase it at the end of the lease period. On June 10, 2004, GMAC notified Mr. Floyd that the leased vehicle had been sold. In his "More Definite Statement," Mr. Floyd claims that by selling the vehicle prior to the scheduled expiration of the lease agreement, GMAC breached its contract with Mr. Floyd. (D.I. 7 at 2.)

In the Court's view, Mr. Floyd's claim with regard to the purchase of the 2001 vehicle is contractual in nature. Mr. Floyd has alleged no facts whereby relief could be granted pursuant to the TLA or Regulation M under any set of facts that could be proved consistent with Mr. Floyd's allegations. Accordingly, the Court will dismiss the TLA claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

2.   Equal Credit Opportunity Act

The Equal Credit Opportunity Act, 15 U.S.C. § 1691 <u>et</u> <u>seq</u>. ("ECOA"), makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national

11

origin, sex or marital status, or age." 15 U.S.C. § 1691(a). To establish a prima facie case under ECOA the class members must show that (1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite qualification, plaintiff was denied credit. See Chiang v. Veneman, 385 F.3d 256, 259 (3d Cir. 2004)(citations omitted).

It is not clear from Mr. Floyd's pleadings whether he is alleging an ECOA violation with regard to the lease agreement with GMAC that he executed in 2001, his attempt to purchase the 2001 vehicle from GMAC in 2004, or the loan transactions with Sun Trust Bank associated with the automobile purchases from Saturn of Newark in 2004. Therefore, the Court will analyze all three transactions.

With regard to the lease agreement that Mr. Floyd entered into with GMAC in 2001, the Court concludes that Mr. Floyd's claim is time barred. Affirmative claims under the ECOA are subject to a two year statute of limitations. See 15 U.S.C. § 1691e(f). Mr. Floyd signed the lease agreement with GMAC in May 2001. Mr. Floyd filed his Complaint more than three years later, on August 16, 2004. Thus, the Court concludes that Mr. Floyd's ECOA claim with regard to the 2001 GMAC credit transaction is time barred.

With regard to the 2004 credit transactions with Sun Trust bank, the Court concludes that no relief could be granted

pursuant to the ECOA under any set of facts that could be proved consistent with Mr. Floyd's allegations. Mr. Floyd does not allege that Sun Trust bank or Saturn of Newark denied him credit. To the contrary, Mr. Floyd alleges that Sun Trust financed the gold 2004 vehicle he purchased on May 27, 2004 and gave him a second loan for the red 2004 vehicle he purchased on June 14, 2004. The only mention of denial of credit in the pleadings is in reference to non-party automobile dealers that denied Mr. Floyd credit due to the presence on his credit report of the first Sun Trust loan. (D.I. 7 at 3.) Further, Sun Trust bank is not a party to this lawsuit. Thus, the Court concludes that no relief could be granted pursuant to the ECOA with regard to the 2004 financing transactions.

With regard to Mr. Floyd's attempt to purchase the 2001 leased vehicle from GMAC in 2004, the Court concludes that the ECOA is inapplicable. Mr. Floyd does not allege that he applied for any credit in 2004 with regard to the purchase of the 2001 vehicle or that he was denied credit based on his membership in a protected class. Rather, Mr. Floyd alleges that GMAC breached its 2001 contract with him by selling the leased vehicle prior to the expiration of the lease agreement. Thus, the Court concludes that no relief could be granted pursuant to the ECOA with regard to Mr. Floyd's dealings with GMAC in 2004.

**CONCLUSION**

Because the Court concludes that it lacks subject matter

13

jurisdiction to hear this lawsuit[1], the Renewed Motion To Dismiss (D.I. 8) filed by Defendant General Motors Acceptance Corporations will be granted and this lawsuit will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

An appropriate Order will be entered.

---

[1] Because the Court concludes that it lacks subject matter jurisdiction, the Court will not address GMAC's arguments with regard to the common law fraud claim.