```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE

ROBERT T. FLOYD,              :
                              :
        Plaintiff,            :
                              :
   v.                         :   Civil Action No. 04-944-JJF
                              :
SATURN OF NEWARK,             :
                              :
        Defendant.            :
```

Robert T. Floyd, Darby, Pennsylvania.
Pro Se Plaintiff.

Danielle K. Yearick, Esquire, of
TYBOUT, REDFEARN & PELL, Wilmington, Delaware.
Attorney for Defendant.

**MEMORANDUM OPINION**

January 24, 2006
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant's Motion to Dismiss (D.I. 11). For the reasons discussed, the Motion will be granted.

**BACKGROUND**

**I.    Factual Background**

In May 2001, Plaintiff leased a 2001 Saturn automobile from Defendant, a car dealership located in Newark, Delaware. Plaintiff entered into a lease agreement with General Motors Acceptance Corporation ("GMAC"), which financed the lease. Pursuant to the terms of the lease agreement, the lease was scheduled to terminate in August 2004, and Plaintiff would have an option to purchase the vehicle at that time. Plaintiff alleges that, in February 2004, he approached a sales agent at Defendant's place of business with regard to exercising his right to purchase the leased vehicle. The sales agent allegedly told Plaintiff that when there were five months remaining on the lease, GMAC would send Plaintiff a letter excusing the final five lease payments should Plaintiff purchase a new automobile. Plaintiff further alleges that the sales agent told him that he would not have to worry about paying for excess mileage on the leased vehicle.

On May 27, 2004, Plaintiff returned to Defendant's place of business allegedly because only four payments remained on the

1

lease, yet Plaintiff had not received the letter from GMAC, which the sales agent had promised. During the May 27 visit, the sales agent convinced Plaintiff to purchase a gold 2004 Saturn automobile, which Plaintiff financed through a loan with Sun Trust Bank. Plaintiff turned in the leased 2001 Saturn to Defendant at that time. The sales agent then told Plaintiff that he may have to pay for excess mileage on the previously-leased vehicle.

GMAC subsequently billed Plaintiff $3,047 for excess mileage on the leased vehicle. On June 2, 2004, Plaintiff sent a letter to GMAC indicating his desire to reacquire the 2001 leased vehicle and to purchase it at the end of the lease term. On June 3, 2004, Plaintiff again wrote to GMAC stating his belief that he had a legal right to purchase the leased vehicle until August 2004. On June 10, 2004, GMAC allegedly sent a letter to Plaintiff stating that the vehicle had been sold.

On June 10, 2004, Plaintiff returned the gold 2004 automobile to Defendant. Plaintiff alleges that he was subsequently denied credit by other dealerships because the new car loan from Sun Trust Bank appeared on his credit report. On June 14, 2004, Plaintiff returned to Defendant's place of business and purchased a red 2004 Saturn automobile, again financing it through Sun Trust Bank. Plaintiff alleges that both Sun Trust loans ran concurrently until the loan for the gold 2004

2

Saturn "fell into late status," damaging Plaintiff's credit rating.

## II. Procedural History

On August 16, 2004, Plaintiff filed a *pro se* Complaint against GMAC and Saturn of Newark. (D.I. 1). The Court construes Plaintiff's Complaint to allege violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, breach of contract, and common law fraud.

GMAC filed a Motion To Dismiss on September 7, 2004 (D.I. 4) and a Renewed Motion To Dismiss on September 28, 2004 (D.I. 8). On July 11, 2005, the Court granted GMAC's Motion To Dismiss (D.I. 15), concluding that the Court lacked subject matter jurisdiction to hear the case.

Presently before the Court is Defendant Saturn of Newark's Motion To Dismiss (D.I. 11), filed April 26, 2005.

### PARTIES' CONTENTIONS

By its Motion, Defendant contends that this lawsuit should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(4) and (5) due to insufficiency of process and insufficiency of service of process. Specifically, Defendant contends that Plaintiff failed to perfect service within 120 days, that Plaintiff failed to serve a person authorized to receive service, and that Plaintiff failed to name the proper

3

party. Alternatively, Defendant contends that the lawsuit should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction as the amount in controversy is less than $75,000 and there is no federal question present in the case.

Plaintiff did not file a response to Defendant's Motion.

## DISCUSSION

### I.  Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Coxson v. Comm. of Pennsylvania, 935 F. Supp. 624, 626 (W.D. Pa. 1996)(citations omitted). A motion to dismiss under 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The instant case presents a facial challenge because Defendant does not dispute the existence of the jurisdictional facts alleged in the Complaint. Therefore, the Court must accept the facts alleged in the Complaint as true, and draw all reasonable inferences in favor of Plaintiff. Id.

## II. Whether The Court Has Subject Matter Jurisdiction

### A. Diversity of Citizenship

A federal court has subject matter jurisdiction based on diversity of citizenship when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different States." 28 U.S.C. § 1332 (2005).

In his Complaint (D.I. 1), Plaintiff alleges that he is a citizen of Pennsylvania and that Defendant is a citizen of Delaware. Defendant does not dispute Plaintiff's allegations with regard to the parties' citizenship. Rather, Defendant contends that the Court lacks diversity jurisdiction because the amount in controversy is less than $75,000.

Accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, as the Court must when analyzing a motion to dismiss, the Court concludes that Plaintiff has established diversity of citizenship among the parties. However, Plaintiff has not satisfied the jurisdictional amount in controversy. In determining the jurisdictional amount, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indemnification Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). Dismissal is only appropriate if the court is certain that the jurisdictional amount cannot be met and the claims are

insubstantial on their face. In re LifeUSA Holding Inc., 242 F.3d 136, 143 (3d Cir. 2001). Once the defendant challenges the plaintiff's allegations regarding the amount in controversy, the plaintiff must produce sufficient evidence to demonstrate that his or her claims meet the jurisdictional amount. Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997).

In this case, Plaintiff alleges that he is entitled to $20,000 in damages. (D.I. 7). Thus, Plaintiff has not satisfied the $75,000 threshold to support the exercise of diversity jurisdiction. Further, Plaintiff has not responded to Defendant's Motion To Dismiss, and thus, has failed to come forward with facts necessary to support diversity jurisdiction. Accordingly, the Court concludes that Plaintiff's allegations fail to support diversity jurisdiction.

B. Federal Question

Pursuant to 28 U.S.C. § 1331, federal courts have federal question jurisdiction over "cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983).

1.   Truth in Lending Act

In his Complaint, Plaintiff alleges that "[g]oods leased to consumers are covered by chapter 5 of the Truth in Lending Act and FTC's regulation M..." (D.I. 1 at 2).

The Consumer Leasing Act ("CLA") was enacted in 1976 as an amendment to the Truth in Lending Act ("TLA"), 15 U.S.C. § 1601. The CLA extends the TLA's credit disclosure requirements to consumer leases; its primary purpose is to "assure a meaningful disclosure of the terms of leases...so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." Id. The CLA thus requires lessors of personal property to make certain disclosures "in a clear and conspicuous manner" upon entering into a lease. 15 U.S.C. § 1667a. The CLA applies to all leases for the use of "personal property" having a term "exceeding four months" that have a "total contractual obligation not exceeding $25,000." 15 U.S.C. § 1667(1). The statute creates a private right of action against lessors who breach the disclosure requirements. See 15 U.S.C. § 1667d; 15 U.S.C. § 1640.

In passing the CLA, Congress also delegated to the Federal Reserve Board authority to "prescribe regulations to update and clarify the requirements and definitions applicable to lease disclosures" and to "publish model disclosure forms to facilitate compliance with the [statute's] requirements." 15 U.S.C. § 1667f(a)(1), (b)(1). Those regulations, collectively referred to as "Regulation M", are codified at 12 C.F.R. § 213. Courts are to defer to these regulations and associated commentary when interpreting the TLA unless they are "demonstrably irrational." See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980).

In pertinent part, the CLA requires a lessor to disclose in writing at the inception of a lease:

> (4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;
> (5) A statement of the amount or method of determining the amount of any liabilities the lease imposes upon the lessee at the end of the term and whether or not the lessee has the option to purchase the leased property and at what price and time;
> * * * *
> (11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination.

15 U.S.C. § 1667a.

Regulation M states in pertinent part that the lessor shall

8

disclose the following information:

> (d) Other charges. The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. . . .
> (g) Early termination--
> (1) Conditions and disclosure of charges. A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term; and the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable. . . .
> (h) Maintenance and repair - . . .
> (2) Wear and use standard. A statement of the lessor's standards for wear and use (if any), which must be reasonable; and
> (3) Notice of wear and use standard. In a motor-vehicle lease, a notice regarding wear and use substantially similar to the following: "Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use." The notice shall also specify the amount or method for determining any charge for excess mileage.
> (i) Purchase option. A statement of whether or not the lessee has the option to purchase the leased property, and:
> (1) End of lease term. If at the end of the lease term, the purchase price; and
> (2) During lease term. If prior to the end of the lease term, the purchase price or the method for determining the price and when the lessee may exercise this option.

12 C.F.R. § 213.4.

Viewing the Complaint (D.I. 1) and Plaintiff's subsequent "More Definite Statement" (D.I. 7) in light of the CLA and Regulation M, the Court concludes that Plaintiff has failed to state a claim pursuant to the TLA. Plaintiff alleges that he was discouraged from purchasing the 2001 Saturn, but nowhere does Plaintiff allege that Defendant failed to disclose terms in the lease agreement at the time the parties entered into the lease

9

for the 2001 Saturn. In fact, Plaintiff alleges that the lease agreement in Paragraph 20 states that he had a contractual right to purchase the 2001 vehicle "only at the scheduled lease end." (D.I. 7 at 2). Similarly, Plaintiff does not allege that Defendant failed to disclose terms in either of the 2004 transactions.

In the Court's view, Plaintiff's claim with regard to the purchase of the 2001 vehicle is contractual in nature. Plaintiff has alleged no facts whereby relief could be granted pursuant to the TLA or Regulation M. Accordingly, the Court concludes that Plaintiff has not pleaded a federal question under the TLA.

    2.   Equal Credit Opportunity Act

The Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA"), makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). To establish a prima facie case under the ECOA a Plaintiff must show that "(1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite qualification, plaintiff was denied credit." In re Chiang, 385 F.3d 256, 259 (3d Cir. 2004).

It is not clear from Plaintiff's pleadings whether he is alleging an ECOA violation with regard to the lease agreement executed in 2001, his attempt to purchase the 2001 vehicle in 2004, or the loan transactions with Sun Trust Bank associated with the purchases from Defendant in 2004. Therefore, the Court will analyze all three transactions.

With regard to the lease agreement entered into in 2001, the Court concludes that Plaintiff's claim is time barred. Affirmative claims under the ECOA are subject to a two-year statute of limitations. See 15 U.S.C. § 1691e(f). Plaintiff signed the lease agreement in May 2001; he filed his Complaint more than three years later on August 16, 2004. Thus, the Court concludes that Plaintiff's ECOA claim with regard to the 2001 transaction is time barred.

With regard to the 2004 credit transactions, the Court concludes that no relief could be granted pursuant to the ECOA under any set of facts that could be proved consistent with Plaintiff's allegations. Plaintiff does not allege that Defendant denied him credit. To the contrary, Plaintiff alleges that the gold 2004 vehicle was financed on May 27, 2004 and that a second loan for the red 2004 vehicle was given on June 14, 2004. The only mention of a denial of credit in the pleadings is in reference to non-party automobile dealers that denied Plaintiff credit due to the presence on his credit report of the

11

first Sun Trust Bank loan. Thus, the Court concludes that no relief could be granted pursuant to the ECOA with regard to the 2004 transactions.

With regard to Plaintiff's attempt to purchase the 2001 leased vehicle in 2004, the Court concludes that the ECOA is inapplicable. Plaintiff does not allege that he applied for any credit in 2004 with regard to the purchase of the 2001 vehicle or that he was denied credit based on his membership in a protected class. Rather, Plaintiff alleges that his 2001 contract was breached by selling the leased vehicle prior to the expiration of the lease agreement. Thus, the Court concludes that no relief could be granted pursuant to the ECOA.

Even assuming that Defendant is a creditor, the Court concludes that Plaintiff has not pleaded a claim under the ECOA. See Costa v. Mauro Chevrolet, Inc., No. 03-C-8223, 2005 U.S. Dist. LEXIS 14539, at *21 n.7 (N.D. Ill. July 18, 2005). Accordingly, the Court concludes that Plaintiff's Complaint does not include a federal controversy, and therefore, the Court lacks subject matter jurisdiction.

**CONCLUSION**

Because the Court concludes that it lacks subject matter jurisdiction, Defendant's Motion To Dismiss will be granted and

12

this lawsuit will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

An appropriate Order will be entered.

---

[1] Because the Court concludes that it lacks subject matter jurisdiction, the Court will not address Defendant's argument with regard to insufficiency of process and insufficiency of service of process.

13